**Matthew S. Parmet** (CSB # 296742)
matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone 310-928-1277

**Rachael V. Rustmann***
Texas Bar No. 24073653
rrustmann@mybackwages.com
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
*pro hac vice application forthcoming*

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN TAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NTT DATA, INC.; NTT DATA SERVICES, LLC; and DOES #1 through #20, inclusive,<br><br>Defendants. | Case No. 3:21-cv-06284<br><br>**Plaintiff's Original Class Action Complaint for Damages**<br><br>1. **Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Order 16-2001)**<br>2. **Violations of record keeping requirements (CAL. LAB. CODE § 226)**<br>3. **Waiting time penalties (CAL. LAB. CODE § 203)**<br>4. **Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)**<br>5. **Civil penalties under the Private Attorneys General Act of 2004 (CAL. LAB. CODE §§ 2698, *et seq.*)** |

## SUMMARY

1. Plaintiff Alan Tam worked for NTT Data, Inc. and NTT Data Services, LLC (together, "NTT") as Senior Desktop Support and was tasked with working onsite to provide technical support to NTT and/or their clients.

PARMET PC

2.     The nature of Plaintiff's working relationships with NTT is that of an employer-employee, and he is entitled to the benefits of an employee under California law.

3.     Plaintiff often worked up to 45 hours per week while working for NTT.

4.     However, NTT refused to properly compensate him for all hours worked each week by refusing to compensate him his complete time and a half damages for all hours worked in excess of 40 hours per week.

5.     NTT did not pay Plaintiff the statutorily required minimum rate for the computer employee exemption to apply.

6.     NTT also did not guarantee Plaintiff a salary.

7.     Instead of paying overtime as required by California law, NTT improperly paid Tam and the Putative Class Members their straight time hourly rate for all hours worked with no overtime compensation, known commonly as "straight time for overtime pay."

8.     Tam brings this class action to recover the unpaid overtime wages and other damages owed to himself and other Putative Class Members like him.

9.     Tam seeks back wages, liquidated damages, attorney's fees, costs, and all other remedies available under California law.

## JURISDICTION & VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because this action involves citizens of different states and the amount in controversy exceeds the sum of $75,000.00.

11.     Furthermore, this Court has original subject matter jurisdiction pursuant to the Class Actions Fairness Act and 28 U.S.C. § 1332(d)(2) as the amount in controversy for the entire class exceeds $5,000,000.00.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (d) because NTT conducts business in this District and a significant portion of the events giving rise to Plaintiff Tam's claims took place in this district.

13. A substantial part of the events or omissions giving rise to the claim occurred in the City and County of San Francisco, California.

14. This matter is therefore properly assigned to the District's San Francisco or Oakland Divisions. Civ. L.R. 3-2(d).

## PARTIES

15. Tam is a natural person who is a resident and citizen of the City and County of San Francisco, California.

16. Tam worked for NTT as Senior Desktop Support from approximately October 2018 until September 2020.

17. Tam seeks class certification of a class under California Code of Civil Procedure section 382, defined as follows:

**All NTT employees in California who were paid their straight time hourly rate for all hours worked, including overtime hours, for the past four years (the "Putative Class Members").**

18. NTT Data, Inc. is a Delaware corporation.

19. NTT Data, Inc. maintains its headquarters and principal place of business in Plano, Texas.

20. NTT Data, Inc. is a citizen of Delaware and Texas.

21. NTT Data, Inc. conducts business in a systematic and continuous manner throughout California, including this District.

22. NTT Data, Inc. may be served by serving its registered agent for service of process: **CT Corporation, 818 West Seventh St., Ste. 930, Los Angeles, CA 90017**.

23. NTT Data Services, LLC is a Delaware limited liability company.

24. NTT Data Services, LLC maintains its headquarters and principal place of business in Plano, Texas.

25. NTT Data, Inc. is an ultimate member of NTT Data Services, LLC.

26. At all relevant times, NTT Data Services, LLC's ultimate members were and are citizens of Delaware and Texas.

PARMET PC

27. NTT Data Services, LLC may be served by serving its registered agent for service of process: **CT Corporation, 818 West Seventh St., Ste. 930, Los Angeles, CA 90017**.

28. Tam is informed and believes, and on that basis alleges, that at all relevant times NTT and Defendants Does #1 through #20 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of NTT.

29. NTT and Defendants Does #1 through #20 employed and/or jointly employed Tam and the Putative Class Members.

30. NTT and Defendants Does #1 through #20 are joint employers for purposes of California law.

31. Tam is unaware of the true names of Defendants Does #1 through #20, and so Tam sues those Defendants under said fictitious names pursuant to California Code of Civil Procedure section 474. (*Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986).)

32. Tam will amend this Complaint to show the true names and capacities of such fictitiously named Defendants after the same has been ascertained.

33. Because the true names of Defendants Does #1 through #20 are currently unknown to Tam, Tam refers to all Defendants in this lawsuit collectively as "NTT" throughout this Complaint.

FACTS

34. NTT is a full-service provider of technology education services to its clients across the country.

35. To provides its services, NTT staffs employees throughout the United States.

36. Tam was one of those employees.

37. Tam worked for NTT from October 2018 until September 2020.

38. Tam performed work for NTT in San Francisco, California.

39. NTT paid Tam by the hour.

40. Tam was paid his flat hourly rate for all hours he worked.

41. NTT did not pay Plaintiff the statutorily required minimum rate for the computer employee exemption to apply.

42. Tam reported the hours he worked to NTT on a regular basis.

43. However, NTT refused to compensate Tam his time-and-a-half overtime premiums for all hours worked in excess of 40 hours per week.

44. Tam regularly worked over 40 hours. Tam often worked 9- to 10-hour shifts, 5 days a week.

45. While exact job titles and job duties may differ, Tam and the Putative Class Members are and were subjected to the same or similar illegal pay practices for similar work.

46. Throughout his employment with NTT, NTT paid Tam his straight time hourly rate for all hours worked.

47. Tam and the Putative Class Members work for NTT under its straight time for overtime pay scheme.

48. Tam and the Putative Class Members did not receive a salary.

49. If Tam and the Putative Class Members did not work, they did not get paid.

50. Tam and the Putative Class Members did not receive overtime pay.

51. This is despite the fact Tam and the Putative Class Members often worked nine or more hours a day, five days a week, for weeks at a time.

52. Tam and the Putative Class Members received the straight time for overtime pay regardless of the number of hours they worked in a week, even when they worked more than 40 hours in a workweek.

53. Tam and the Putative Class Members received the straight time for overtime pay regardless of the number of hours they worked in a week, even when they worked more than eight hours in a workday.

54. Tam and the Putative Class Members are not employed on a salary basis.

55. Tam and the Putative Class Members do not, and never have, received guaranteed weekly compensation from NTT irrespective of the hours worked (i.e., the only compensation they receive is their hourly rate for all hours worked).

56. Tam and the Putative Class Members work in accordance with the schedule set by NTT.

PARMET PC

57. Tam's work schedule is typical of the Putative Class Members.

58. NTT controls Tam and the Putative Class Members' pay.

59. Likewise, NTT controls Tam and the Putative Class Members' work.

60. NTT requires Tam and the Putative Class Members to follow their policies and procedures.

61. Tam and the Putative Class Members' work must adhere to the quality standards put in place by NTT.

62. As Senior Desktop Support, Tam was responsible for provide NTT's clients with technical support and diagnose and resolve product performance problems.

63. All NTT's Putative Class Members perform similar duties, performing various managed client services, according to established guidelines, specifications, and restrictions.

64. At all relevant times, NTT maintained control over Tam and the Putative Class Members via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

65. Tam and the Putative Class Members did not have the power to hire or fire any employees.

66. Tam's working relationship with NTT is similar to NTT's relationship with its other Putative Class Members.

67. NTT knew Tam and the Putative Class Members worked more than 40 hours in a week.

68. NTT knew Tam and the Putative Class Members worked more than eight hours in a workday.

69. NTT knew, or showed reckless disregard for whether the Putative Class Members were entitled to overtime under California law.

70. Nonetheless, NTT failed to pay Tam and the Putative Class Members overtime.

71. NTT willfully violated California law.

### CLASS ACTION ALLEGATIONS

72. Numerous NTT employees have been victimized by this pattern, practice, and policy, which are in willful violation of the California Labor Code.

73. Many of these employees have worked with Tam and the Putative Class Members have reported that they were subjected to NTT's straight time for overtime pay plan.

74. Even if their precise job titles may differ, the Putative Class Members are all victims of NTT's unlawful compensation practices and are similarly situated to Tam in terms of relevant job duties, pay provisions, and employment practices.

75. Thus, from Tam's observations and discussions with these other NTT employees, he is aware that the illegal practices or policies of NTT have been imposed on a distinct group of its employees.

76. Tam and the Putative Class Members were subjected to NTT's straight time for overtime pay plan.

77. The Putative Class Members regularly work or have worked in excess of 40 hours during a workweek.

78. The Putative Class Members regularly work or have worked in excess of eight hours in a single workday.

79. The Putative Class Members regularly work or have worked in excess of 12 hours in a single workday.

80. The job specific titles or precise job responsibilities of the individual class members do not prevent class or collective treatment.

81. All the Putative Class Members, irrespective of their particular job requirements, are entitled to overtime compensation at the minimum rates required by California law for all overtime hours worked.

82. Although the exact amount of damages may vary among the Putative Class Members, the damages can be easily calculated by the same or similar formula because all hours worked by the Putative Class Members were recorded by a time-keeper and reflected in NTT's records.

83. Tam has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

84. Like the Putative Class Members, Tam has an interest in obtaining the unpaid overtime wages owed under state law.

85. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

86. Absent a class and collective action, many Putative Class Members will not obtain redress of their injuries, and NTT will reap the unjust benefits of violating the California Labor Code.

87. Further, even if some of the Putative Class Members could afford individual litigation against NTT, it would be unduly burdensome to the judicial system.

88. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

89. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

90. Among the common questions of law and fact are:

    a. Whether NTT employed the Putative Class Members within the meaning of the California Labor Code;

    b. Whether NTT's decision to pay its employees straight time pay for all hours worked without overtime violated the California Labor Code;

    c. Whether NTT's violations of the California Labor Code were made in good faith; and

    d. Whether NTT's illegal pay practices applied to all Putative Class Members.

91. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

92. Tam and the Putative Class Members sustained damages arising out of NTT's illegal and uniform pay policy.

93. Tam knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

94. NTT's illegal pay policy uniformly deprived Tam and the Putative Class Members of the premium overtime wages they are owed under California law.

95.     There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the California Labor Code who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

96.     The Court should certify the claims under the California Labor Code as a class under Code of Civil Procedure section 382 comprised of the Putative Class Members.

97.     The Putative Class Members are known to NTT, are readily identifiable, and can be located through NTT's records.

98.     In sum, NTT's straight time for overtime pay plan results from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the Putative Class Members.

99.     Thus, Tam's experiences are typical of the Putative Class Members' experiences.

### FIRST CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW

100.    Tam incorporates all other allegations.

101.    The California Labor Code requires that all employees, including Tam and the Putative Class Members, receive 1.5 times their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders.

102.    Despite working over eight hours a day as part of their normal and regular shift, Tam and the Putative Class Members did not receive the full overtime compensation at a rate not less than 1.5 times their proper regular rates for all hours worked over eight in one day.

103.    The California Labor Code also requires that all employees, including Tam and the Putative Class Members, receive two times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders.

104.    Although Tam and the Putative Class Members occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

### SECOND CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS

105.    Tam incorporates all other allegations.

1    106.    California Labor Code section 226 requires NTT to keep accurate records regarding

2    the rates of pay for their California employees and provide that information to Tam and the Putative

3    Class Members with their wage payment.

4    107.    Because NTT failed to pay Tam and the Putative Class Members lawful wages, it did

5    not maintain accurate records of Tam and the Putative Class Members' daily hours, gross wages

6    earned, net wages earned, and the applicable hourly rates, and did not provide that information to

7    Tam and the Putative Class Members with their wages.

8    ### THIRD CAUSE OF ACTION—WAITING TIME PENALTIES

9    108.    Tam incorporates all other allegations.

10    109.    At all relevant times, NTT was required to pay Tam and the Putative Class Members

11    all wages owed in a timely fashion at the end of employment pursuant to California Labor Code

12    sections 201 to 204.

13    110.    As a result of NTT's alleged California Labor Code violations, NTT regularly failed to

14    pay Tam and the Putative Class Members their final wages pursuant to California Labor Code sections

15    201 to 204, and accordingly NTT owes waiting time penalties pursuant to California Labor Code

16    section 203.

17    111.    The conduct of NTT, in violation of Tam and the Putative Class Members' rights, was

18    willful and was undertaken by the agents, employees, and managers of NTT.

19    112.    NTT's willful failure to provide Tam and the Putative Class Members the wages due

20    and owing them upon separation from employment results in a continuation of wages up to 30 days

21    from the time the wages were due.

22    ### FOURTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW

23    113.    Tam incorporates all other allegations.

24    114.    NTT has engaged, and continues to engage, in unfair and unlawful business practices

25    in California by practicing, employing, and utilizing the employment practices outlined above by

26    knowingly denying employees: (1) overtime wages required by California law; (2) accurate wage

27    statements; and (3) waiting time penalties.

28

PARMET PC

115. As a result of NTT's failure to comply with state law, NTT has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

116. The relevant acts by NTT occurred within the four years preceding the filing of this action.

117. On information and belief, NTT has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Tam and the Putative Class Members of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

### FIFTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA

118. Tam incorporates all other allegations.

119. Tam and the Putative Class Members are aggrieved employees within the meaning of California Labor Code section 2699.

120. As aggrieved employees, Tam and the aggrieved employees seek to recover civil penalties against NTT pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698, *et seq.*

121. NTT has knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

      a.      Failing to pay wages (Cal. Lab. Code §§ 510, 1194, 1194.5; IWC Wage Orders);

      b.      Violating record keeping requirements (Cal. Lab. Code § 226);

      c.      Unlawfully collecting, receiving, or withholding wages (Cal. Lab. Code §§ 221, 225.5);

      d.      Failing to pay wages promptly following termination of employment, or when due and payable (Cal. Lab. Code § 203).

122. The civil penalties sought by Tam and the aggrieved employees include the recovery of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

PARMET PC

123.     Tam and the aggrieved employees seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Tam and the Putative Class Members pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

124.     Tam and the aggrieved employees will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

125.     Tam provided notice to NTT of its California Labor Code and IWC Wage Orders violations on August 13, 2021.

126.     On the same date, Tam submitted notice to the California Labor and Workplace Development Agency (LWDA) as required by PAGA.

127.     Tam's notice to NTT and the LWDA advises them of his intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

128.     If the LWDA declines to investigate or prosecute, Tam and the Putative Class Members will pursue their PAGA claims in the course of this action.

129.     Tam and the aggrieved employees had to retain counsel to file this action to protect their interests and to assess and collect the civil penalties owed by NTT.

130.     Tam and the aggrieved employees have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA.

### RELIEF SOUGHT

131.     Tam prays for judgment against NTT as follows:

a.       For an order certifying a class action under Federal Rule of Civil Procedure 23;

b.       For an order finding NTT liable for violations of PAGA with respect to Tam and all aggrieved employees covered by this case;

c.       For a judgment awarding all unpaid wages, liquidated damages, and penalty damages to Tam and all Class Members covered by this case;

| | | |
|---|---|---|
| d. | | For a judgment awarding Tam and all Class Members covered by this case their costs of this action; |
| e. | | For a judgment awarding Tam and all Class Members covered by this case their attorneys' fees; |
| f. | | For a judgment awarding Tam and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and |
| g. | | For all such other and further relief as may be necessary and appropriate. |

Date:   <u>August 14, 2021</u>

Respectfully submitted,

**PARMET PC**

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**

**Attorneys for Plaintiff**

PARMET PC